## IN THE COURT OF APPEALS OF IOWA

No. 16-0978
Filed July 19, 2017

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DONALD LEROY STEELE,**
    Defendant-Appellant.
_____


Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson,

Judge.


A defendant challenges his judgment and sentence for possession of

marijuana with intent to deliver. **AFFIRMED.**


Christine E. Branstad of Branstad Law, P.L.L.C., Des Moines, for

appellant.

Thomas J. Miller, Attorney General, and Kelli Huser, Assistant Attorney

General, for appellee.


Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

Donald Steele pleaded guilty to possession of marijuana with intent to deliver in return for the State's dismissal of a similar offense involving crack cocaine. Several days later, Steele wrote the judge a letter asking to withdraw his guilty plea. Treating his request as a motion in arrest of judgment, the district court took testimony from Steele. The district court did not find Steele's testimony credible when compared with his statements at the plea hearing and denied his motion in arrest of judgment. On appeal, Steele contends the district court abused its discretion in denying his motion because (1) his guilty plea was not knowing, voluntary, and intelligent and (2) the plea lacked a factual basis as to his intent to deliver. Because the district court properly exercised its discretion in rejecting Steele's request to withdraw his guilty plea, we affirm.

## I.        Facts and Prior Proceedings

According to the minutes of evidence, on New Year's Eve of 2015, Des Moines police officer Emily Shoff-Salsbery saw the Toyota Camry driven by Steele turn without signaling. As the officer closed in on the Camry, Steele made several abrupt turns. Steele then sped through a residential neighborhood. Before Shoff-Salsbery could activate her lights, Steele drove down a dead-end street, stopped the car, and fled on foot. Steele's female passenger also left the Camry but obeyed the officer's command to stop. The passenger told Shoff-Salsbery she just met Steele when he offered her a ride home after she had an argument with her boyfriend. The passenger did not know why Steele fled and only had her purse and "some potato chips" inside the car. In her investigation, Shoff-Salsbery learned the Camry driven by Steele was a rental car and the

passenger had not rented it. When the officer approached the car, she smelled an odor of marijuana coming from the driver's side, and behind the driver's seat, she found a brown jacket containing a plastic bag of marijuana.

Meanwhile, another officer chased Steele by following his tracks in the fresh snow for about four blocks. The footprints led to a parking lot, where the officer heard Steele talking on his phone, asking for a ride. The officer called to Steele, who again took off. Two officers pursued Steele until they found him walking on a busy street. The officers ordered Steele "to drop what was in his hand," and Steele "threw the items to the side and stopped and slowly went to the ground." After arresting Steele, the officers saw the tossed items included "several baggies including a quantity of marijuana and a quantity . . . of cocaine base 'crack,' as well as a car key" to the Camry abandoned by Steele.

In her affidavit accompanying the complaint, Officer Shoff-Salsbery stated Steele ran from the car but was caught a short distance later. The affidavit continued: "Inside the vehicle officers found a larger plastic bag that also contained marijuana . . . . [Steele] was also found with $767 in various bills on his person, both the packaging of the narcotics and the amount of cash are consistent with the sale of narcotics."

A February 2016 lab report showed Steele possessed 7.23 grams of cocaine. Important to this appeal, the lab report divided the marijuana into two listed items: the first item weighed 10.43 grams and the second item weighed 4.01 grams (divided into two subparts weighing 1.42 and 2.59 grams). Steele contends, logically, the first item was the "larger plastic bag" of marijuana found inside the car and the smaller item was the marijuana he tossed on the ground.

The State does not dispute this contention but asserts the record supports Steele's possession of both the marijuana tossed on the ground and the marijuana left inside the jacket in the rental car.

According to the minutes, the State expected Shoff-Salsbery, along with the officers who chased Steele, to testify:

> [T]he items found in connection with [Steele] in this case are consistent with those items found in the possession of drug dealers.
> [They] will further testify that the amount of cocaine base "crack" and marijuana recovered in this case, the manner in which it was packaged, the other facts and circumstances, . . . are consistent with possession of [both such drugs] for sale and inconsistent with the possession of [both such drugs] merely for personal use.

The State charged Steele in two counts: (I) possession of a controlled substance (cocaine) with intent to deliver, in violation of Iowa Code section 124.401(1)(c)(3) (2015), a class "C" felony; and (II) possession of a controlled substance (marijuana) with intent to deliver, in violation of Iowa Code section 124.401(1)(d), a class "D" felony. After conferring with private counsel, Steele entered into a plea bargain with the State in which he agreed to provide a factual basis for count II. In exchange, the State agreed to dismiss count I at sentencing. The parties were free to argue for an appropriate sentence.

We set out the portions of the April 2016 plea hearing relevant to Steele's appellate challenges. The court told Steele he had a right to have a lawyer appointed at public expense if he decided to go to trial. Steele indicated he understood. The court also stated, "this is a class 'D' felony," and set out the penalties, including the fact Steele could spend up to five years in prison and pay up to a $7500 fine, explaining: "I am telling you that because I want you to know

the maximum penalties you are subjecting yourself to by pleading guilty today. Do you understand?" Steele responded he did. Next the court asked: "Knowing all that, do you still want to plead guilty today?" Steele responded: "I have a question." The court stopped the plea hearing and went off the record. Steele discussed his question with his attorney. When Steele was ready to proceed, the following exchange occurred:

> THE COURT: Okay. So let me ask that last question again. Knowing what you are subjecting yourself to, do you still want to plead guilty, sir?
> THE DEFENDANT: Yes, ma'am.
> . . . .
> THE COURT: Are you pleading guilty today voluntarily and of your own free will?
> THE DEFENDANT: Yes, ma'am.

Thereafter, the court told Steele the elements the State would have to prove at trial, including: "[Y]ou possessed a controlled substance with intent to deliver it, that being marijuana. And . . . intent to deliver, that means that you either intended to sell it, share it, or give it away." Steel responded he had no questions about what the State would have to prove. Steele said he threw the marijuana on the ground, he knew it was illegal to have marijuana, the marijuana was packaged in a baggy, and he was going to smoke some of it and share some of it. Steele agreed the court could also consider the minutes of testimony to establish a factual basis and told the court he was satisfied with the advice and services of his plea attorney.

The court gave Steele one more chance to reinstate his plea of not guilty and "have your case go to trial," but Steele wanted to enter a guilty plea and did

so. After discussing Steele's right to file a motion in arrest of judgment, the court ordered a presentence investigation report and set a sentencing hearing.

On April 21, 2016, Steele sent a letter to the court, claiming he had been misled because he wanted to plead to possession and not to possession with intent to deliver. The court treated the letter as a motion in arrest of judgment. Steele's plea counsel withdrew, and new counsel was appointed to represent Steele at sentencing.

In June 2016, the district court held a joint motion-in-arrest-of-judgment and sentencing hearing. Steele offered three reasons to set aside his guilty plea. First, he alleged when he told his plea counsel he wanted to go to trial, she responded she would withdraw if he did not accept the plea offer. Steele said he had been bullied into pleading and he accepted the deal out of frustration—"I felt like I had no other choice." Second, Steele "didn't understand that I could have another lawyer represent me. So I felt like there was no other option but to take what I had." Third, Steele insisted: "I'm not a drug dealer; I'm a user." Steele testified he did not intend to deliver the drugs and thought he was pleading to a possession offense. He argued: "I was by myself giving someone a ride home. How do I intend to deliver?"

Steele admitted on cross-examination that the plea court had told him what the State would have to prove for him to be guilty of possession *with intent to deliver*. But Steele nevertheless claimed to have no recollection of the court discussing the intent-to-deliver element. After the plea court's statements discussing intent to deliver and Steele's response were read to Steele from the

plea transcript, he again blamed his plea lawyer: "I answered every question that my lawyer told me to do, and I did what my lawyer advised me to do."

Quoting the plea transcript to Steele, the court denied his motion, ruling:

> And I went through this guilty plea colloquy with you, and I told you to stop me if you didn't understand anything. When you are telling me today you were bullied into that and you didn't know it was a class "D" felony, and were concerned you wouldn't have a trial [attorney], I don't find that to be credible, Mr. Steele.

The district court proceeded to sentencing, ordering Steele to serve an indeterminate five-year term. Steele now appeals.

## II.     Motion in Arrest of Judgment

We review the district court's denial of Steele's motion in arrest of judgment for an abuse of discretion. *See State v. Myers*, 653 N.W.2d 574, 581 (Iowa 2002). We reverse only where the court's ruling is based on clearly unreasonable or untenable grounds. *See id.* We give deference to the district court's factual findings based on the court's opportunity to observe the witnesses but are not bound by such findings. *See State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). We address each of Steele's challenges to the court's denial of his motion in turn.

**A. Knowing, Voluntary, and Intelligent Plea.** Steele asserts his plea "was not knowing, voluntary, or intelligent." In support, Steele points to his testimony at the motion hearing. Giving appropriate deference to the district court's determination Steele's testimony at the motion hearing was not credible, we cannot find the court abused its discretion. *See id.*

During the guilty-plea colloquy, the court informed Steele that he was admitting possession with intent to deliver, the crime was a class "D" felony, and

he could have an attorney appointed if he proceeded to trial. Steele told the court his plea was voluntary, he turned down several chances to withdraw his plea, and he asked a question immediately after the court set out the maximum penalties for *possession with intent to deliver*. After further discussion with his counsel, Steele proceeded with his plea. Under the plea agreement, the State agreed to dismiss the more serious class "C" felony for possession with intent to deliver crack cocaine. The full colloquy belies Steele's claim he did not understand the consequences of waiving his right to a trial.

**B. Factual Basis.** As its title suggests, the crime of possession with intent requires the State to prove three elements: (1) possession (2) of a controlled substance (3) with intent to deliver. *See* Iowa Code § 124.401(1). Steele does not dispute his possession of the marijuana that, during the plea hearing, he admitted tossing to the ground. Rather, he disputes the factual basis that he possessed the larger stash of marijuana discovered in the rental car he was driving. Steele continues, without proof he possessed the marijuana found in the car, the amount of marijuana is not enough to satisfy the intent-to-deliver element because the weight of the baggies he tossed was "below the one-half ounce threshold for an accommodation offense under Iowa Code section 124.410."[1] Steele contends the court should have adjudged him guilty of only "the appropriate possession charge." *See State v. Cole,* 421 N.W.2d 888, 889–

---

[1] Iowa Code section 124.410 states: "In a prosecution for . . . possession with intent to deliver marijuana, if the prosecution proves that the defendant . . . possessed with intent to deliver one-half ounce or less of marijuana, which was not offered for sale, the defendant is guilty of an accommodation offense . . . ." Under Iowa's previous drug statutes, accommodation deliverers were viewed as less culpable because they were furnishing controlled substances only "as a favor to the recipient" and not for profit. *State v. McNabb*, 241 N.W.2d 32, 35 (Iowa 1976) (interpreting Iowa Code section 204.210 (1975)).

90 (Iowa 1998) (explaining accommodation statute's reference to marijuana possession encompasses "both sentencing and classification of the offense").

The State responds a factual basis existed for Steele's plea because the record establishes he constructively possessed the marijuana left in the rental car, in addition to the marijuana he tossed when stopped after fleeing on foot. The combined weights of the marijuana left in the car (10.43 grams) and the marijuana tossed onto the ground (4.01 grams) equaled 14.44 grams—just slightly more than the one-half ounce referenced in the accommodation statute.[2] Accordingly, the State asserts Steele's intent to deliver could be gleaned from the minutes of testimony and attached lab report.

The plea record supports the State's assertion. Under Iowa Rule of Criminal Procedure 2.8(2)(b), the district court is required to find the factual basis supporting the plea on the record at the plea hearing. *State v. Finney*, 834 N.W.2d 46, 61 (Iowa 2013). In looking for a factual basis, we may consider the prosecutor's statements, the defendant's statements, and the minutes of evidence. *See Rhoades v. State*, 848 N.W.2d 22, 29 (Iowa 2014) (reiterating that "[a]t the time of the guilty plea, the record must disclose facts to satisfy all elements of the offense"). The evidence before the plea court did not have to prove beyond a reasonable doubt Steele committed the crime of possession with

---

[2] Neither party converted the gram measurement in the February 2016 lab report to the ounce measurement in the statute. According to measurement conversion tables from the United States Department of Agriculture (USDA) Agriculture Research Service, to convert grams into ounces, multiply by 0.0353. *See Measurement Conversion Tables*, USDA Agric. Research Serv., http://www.ars.usda.gov/northeast-area/beltsville-md/beltsville-human-nutrition-research-center/nutrient-data-laboratory/docs/measurement-conversion-tables (last modified Aug. 13, 2016). In this case, the equation is 14.44 grams X 0.0353 = 0.509732 ounces. Steele does not argue possession of the total amount of marijuana, in the car and on the ground, would qualify as an accommodation offense.

intent to deliver; the evidence only needed to provide "facts to support the elements of the offense." *See id.*

Under the doctrine of constructive possession, a court may infer Steele's possession of the marijuana from its location and other circumstances. *See State v. Thomas*, 847 N.W.2d 438, 443 (Iowa 2014). A court may consider these non-exclusive factors: (1) "incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings" and (2) "any other circumstances linking the person to the controlled substance." *Id.* (citation omitted). "In a motor-vehicle case, a court may also consider these factors": (1) were the drugs in plain view, (2) were the drugs with the defendant's personal effects, (3) were the drugs on the same side of the car or next to the defendant, (4) did the defendant own the vehicle, and (5) did defendant engage in suspicious activity. *State v. Kemp*, 688 N.W.2d 785, 789 (Iowa 2004).

Here, the minutes show suspicious activity by Steele and other circumstances linking him to the marijuana. Specifically, Steele took evasive action in response to being followed by police. Steele was driving the Camry and a jacket left behind the driver's seat contained the greater amount of marijuana. The sole passenger had only recently met Steele and denied leaving the jacket in the car. When Steele's abrupt turns did not shake the police, Steele abandoned the Camry and fled on foot through the snow, taking the rental car's key with him. The passenger did not flee, talked to the police, and did know why Steele was running away. *See State v. Carter*, 696 N.W.2d 31, 41 (Iowa 2005) (finding driver constructively possessed drugs left in the car based on his "furtive

movements in contrast to the passenger's lack of such movements"). Because an officer following Steele's tracks overheard Steele calling for ride, the court may infer Steele did not intend to return to the car containing the marijuana while the police were nearby. For the second time, Steele ran instead of talking with an officer. As officers closed in, Steele threw away additional marijuana, crack cocaine, and the key to the car he had abandoned. Experienced officers would have testified the amount of marijuana and its packaging, along with the cash Steele possessed, was consistent with an intent to sell the marijuana and inconsistent with possession for personal use. That testimony would be buttressed by Steele's admission at the plea hearing that he planned to "share" the marijuana.

In conclusion, Steele's constructive possession of the marijuana in the car he was driving, along with his admitted possession of the tossed marijuana, provides a factual basis for the intent-to-deliver element of the offense. Accordingly, the record contained a factual basis for Steele's guilty plea, and the district court did not abuse its discretion in denying Steele's motion in arrest of judgment.[3]

**AFFIRMED.**

---

[3] On appeal, Steele also claims his sentence was illegal and should be vacated, asserting he "should have been adjudged guilty and sentenced under the accommodation statute." Because the record showed a factual basis for Steele's possession of an amount of marijuana exceeding the limit in the accommodation statute, that statute does not apply, and the claim cannot prevail. For the same reasons, we reject Steele's final claim: "[P]lea counsel failed in an essential duty as no factual basis exists to supports Steele's guilty plea, and neither plea counsel nor sentencing counsel informed the court of the requirements" of the accommodation statute.